IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| May Wahab, | ) | Civil Action No. 2:16-cv-01583-BHH-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Nancy Berryhill, Acting Commissioner | ) | **OF MAGISTRATE JUDGE** |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case is before the court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).

Plaintiff May Wahab ("Plaintiff" or "Wahab") brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of the final decision of the Commissioner wherein she was denied continued disability benefits after August 1, 2014.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits ("DIB") on February 23, 2000, alleging that she became disabled on December 15, 1998. (R. at 106.) In a decision dated October 10, 2000, Plaintiff was found to be disabled commencing December 15, 1998, due to the following severe impairments:

> chronic fatigue syndrome, a non-specific musculoskeletal syndrome, chronic diffuse pain, mild depressive disorder NOS, rule out hypochondriasis, rule out obsessive/compulsive disorder, asthma, Grade II isthmic spondylolisthesis, cervical spondylosis, . . . cardiomegaly, atherosclerosis of the abdominal and aortic vasculature, degenerative changes of the facet joints at L5-S1, a right-sided and central disc bulge with posterior bone spurring at C5-6 and C6-7, moderate central stenosis, mitral and tricuspid valve insufficiency, some pulmonary insufficiency, some obstructive pulmonary disease, hypertension, peripheral arthralgias, chronic weakness in her extremities, chronic headaches, poor circulation, and chronic diarrhea.

1

(R. at 109; *see also* R. at 106-10.) On October 3, 2006, the Social Security Administration found that Plaintiff's disability continued. (*See* R. at 44.)

In a letter dated October 3, 2011, Ms. Wahab requested that her Social Security benefit payments be stopped. (*See* R. at 42.) She had returned to work in 2011 and 2012. (R. at 22.) On February 11, 2012 and July 18, 2012, Plaintiff was notified that her disability ended in January of 2010 because of "substantial work" and that she was not entitled to benefits beginning in April of 2010. (R. at 121-31, 133-39.) On November 22, 2013, Plaintiff requested expedited reinstatement; she received provisional benefits until April of 2014. (R. at 146-47, 150.) On August 26, 2014, the Social Security Administration notified Plaintiff that her health had improved since her comparison point decision ("CPD") and that her extended period of disability benefits would end in October of 2014. (R. at 153-55.)

On November 10, 2014, the Social Security Administration determined that Plaintiff was "no longer disabled as of August 1, 2014 due to medical improvement." (R. at 20.) After this determination was upheld on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 20.) After a hearing before an ALJ on March 6, 2015, the ALJ issued a decision on June 24, 2015 in which the ALJ determined that Plaintiff had medically improved and that Plaintiff's disability ended as of August 1, 2014. (R. at 20-31.) The Appeals Council denied Plaintiff's request for review, (R. at 10-13), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff's disability ended as of August 1, 2014, the Commissioner has adopted the following findings of the ALJ:

> (1) The most recent favorable medical decision finding that the claimant continued to be disabled is the determination dated October 3, 2006. This is known as the "comparison point decision" or CPD.
>
> (2) At the time of the CPD, the claimant had the following medically determinable impairments: fatigue, pain and weakness secondary to Crohn's disease; back pain/fibromyalgia; and a history of depression and anxiety. These impairments were found to result in the residual functional capacity to perform no work at any exertional level.

(3)     Under the trial work period provisions, the claimant engaged in substantial gainful work activity prior to requesting her expedited period of eligibility (20 CFR 404.1592(a)[)].

(4)     The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through August 1, 2014. Thus, the claimant continued to have the same impairments that she had at the time of the CPD.

(5)     Since August 1, 2014, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

(6)     Medical improvement occurred as of August 1, 2014 (20 CFR 404.1594(b)(1)).

(7)     After careful consideration of the entire record, I find that, as of August 1, 2014, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the following: crawling, kneeling, crouching, climbing, and balancing occasionally; no exposure to temperature extremes, high humidity, concentrated pulmonary irritants, unprotected heights, or dangerous machinery; and limited to performing simple, routine, repetitive tasks.

(8)     The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

(9)     As of August 1, 2014, the claimant's impairments were severe (20 CFR 404.1594(f)(6)).

(10)     As of August 1, 2014, the claimant was unable to perform past relevant work (20 CFR 404.1565).

(11)     On August 1, 2014, the claimant was an individual closely approaching advanced age (20 CFR 404.1563).

(12)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(13)     Beginning on August 1, 2014, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(14) As of August 1, 2014, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

(15) The claimant's disability ended as of August 1, 2014 (20 CFR 404.1594(f)(8)).

(R. at 22-31.)

## APPLICABLE LAW

A claimant for disability benefits bears the burden of proving her disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). While the Social Security Act normally provides for a five-step sequential process to determine if a claimant has a disability, *see* 20 C.F.R. § 404.1520, when determining whether a claimant who has previously been found to be disabled continues to be disabled, the ALJ is required to apply an eight-step sequential evaluation process, *see* 20 C.F.R. § 404.1594. As explained in *McKenzie v. Colvin*, Civ. A. No. 9:14-4816-RMG-BM, 2016 WL 182924 (D.S.C. Jan. 4, 2016), *adopted at* 2016 WL 183907 (Jan. 14, 2016),

> The eight-step process provides: (1) if the claimant is currently engaging in substantial gainful activity, disability ends; (2) if the claimant has an impairment or combination of impairments that meets or medically equals a listing, disability continues; (3) if the claimant does not meet or equal a listing, the ALJ will determine whether "medical improvement" has occurred; (4) if medical improvement has occurred, the ALJ will determine whether the improvement is related to the claimant's ability to work; (5) if there is no medical improvement—or the medical improvement is found to be unrelated to the claimant's ability to work—disability continues; (6) if there has been medical improvement related to the claimant's ability to work, the ALJ will determine whether all of the current impairments, in combination, are "severe," and if not, disability ends; (7) if the claimant's impairments are considered "severe," the ALJ will determine the claimant's RFC, and if the claimant is able to perform past relevant work, disability ends; (8) if the claimant remains unable to perform past relevant work, the ALJ will determine

whether the claimant can perform other work that exists in the national economy given his or her residual functional capacity, age, education, and past relevant work experience.

*McKenzie*, 2016 WL 182924, at *3 (citing 20 C.F.R. § 404.1594(f)(1)-(8)).

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

Plaintiff claims the ALJ erred in "fail[ing] to properly evaluate [her] fibromyalgia as required by SSR 12-2p." (Dkt. No 12 at 15.) Plaintiff further asserts the "ALJ engaged in cherry picking evidence and wrongly evaluated Listing 5.06." (Dkt. No. 12 at 18.) She also contends the ALJ "wrongly dismissed the opinion of [her] treating physician" and "erred in his assessment of the [Plaintiff's] credibility." (Dkt. No. 12 at 20, 23.)

**A.      Fibromyalgia**

Plaintiff asserts the ALJ "erred in failing to find fibromyalgia as a medically determinable impairment and as a severe impairment." (Dkt. No. 12 at 15.) Plaintiff complains the ALJ "fails to even mention fibromyalgia in his Step 2, Step 3, or RFC analysis." (Dkt. No. 12 at 16.) Plaintiff states,

> [E]ven with previous SSA findings, two fibromyalgia diagnos[e]s by rheumatologists, corroborating medical records and tests, testimony of fibromyalgia related symptoms by the claimant, and testimony of fibromyalgia related symptoms by a lay witness, the ALJ failed to include fibromyalgia in his Step 2, Step 3, or RFC analysis.

(Dkt. No. 12 at 16.) Plaintiff contends the ALJ "further erred by not complying with SSR 12-2p." (Dkt. No. 12 at 17.)

Defendant contends, on the other hand, that the ALJ "found Plaintiff's fibromyalgia was both medically determinable and severe in his decision." (Dkt. No. 13 at 8.) Defendant states,

> There is no specific listing to evaluate fibromyalgia, but the ALJ did consider the equivalence of Plaintiff's fibromyalgia and other impairments with the listings, both alone and in combination (Tr. 24-25). Finally, the ALJ accommodated Plaintiff's fibromyalgia when assessing her residual functional capacity by limiting her to a range of light work that occasionally requires crawling, kneeling, crouching, climbing, and balancing but never requires exposure to temperature extremes, high humidity, concentrated pulmonary irritants, unprotected heights, or dangerous machinery (Tr. 26). Thus, the ALJ's evaluation of Plaintiff's fibromyalgia was sufficient. Social Security Ruling (SSR) 12-2p.

(Dkt. No. 13 at 8-9.)

The undersigned has carefully reviewed the ALJ's decision dated June 24, 2015. (*See* R. at 20-31.) The ALJ noted that, at the time of the CPD, Plaintiff had the medically determinable impairment of "back pain/fibromyalgia." (R. at 22.) The ALJ further noted as follows:

> The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through August 1, 2014. Thus, the claimant continued to have the same impairments that she had at the time of the CPD.

(R. at 23.) He also stated that "[a]s of August 1, 2014, the claimant's impairments were severe." (R. at 29.) In light of the foregoing, it appears the ALJ did conclude Plaintiff's fibromyalgia was a severe impairment. (*See* R. at 22-23, 29.) Accordingly, to the extent Plaintiff argues the ALJ erred

in failing to find Plaintiff's fibromyalgia was a severe impairment, Plaintiff's argument is without merit.

As noted above, however, Plaintiff also argued the ALJ erred (a) in failing to mention fibromyalgia in assessing whether Plaintiff had an impairment or combination of impairments that met or medically equaled the severity of a listed impairment and (b) in failing to mention Plaintiff's fibromyalgia in assessing Plaintiff's residual functional capacity. (Dkt. No. 12 at 15-18.)

"Although there is no medical listing for fibromyalgia, Titles II and XVI of Social Security Ruling 12-2p provide[] guidance on how the Commissioner develops evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how to evaluate fibromyalgia in disability claims and continuing disability reviews." *Smith v. Colvin*, Civ. A. No. 2:14CV00042, 2015 WL 7571946, at *7 (W.D. Va. Nov. 24, 2015) (citing SSR 12-2p, 2012 WL 3104869). Social Security Ruling 12-2p states that fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2. Ruling 12-2p explains how the Commissioner considers fibromyalgia ("FM") in the five-step sequential evaluation process-- including the residual functional capacity assessment--for determining disability:

> A. At step 1, we consider the person's work activity. If a person with FM is doing substantial gainful activity, we find that he or she is not disabled.
>
> B. At step 2, we consider whether the person has a "severe" MDI(s) [(medically determinable impairment)]. If we find that the person has an MDI that could reasonably be expected to produce the pain or other symptoms the person alleges, we will consider those symptom(s) in deciding whether the person's impairment(s) is severe. If the person's pain or other symptoms cause a limitation or restriction that has more than a minimal effect on the ability to perform basic work activities, we will find that the person has a severe impairment(s).
>
> C. At step 3, we consider whether the person's impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1). FM cannot meet a listing in appendix 1 because FM is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

D. Residual Functional Capacity (RFC) assessment: In our regulations and SSR 96-8p, we explain that we assess a person's RFC when the person's impairment(s) does not meet or equal a listed impairment. We base our RFC assessment on all relevant evidence in the case record. We consider the effects of all of the person's medically determinable impairments, including impairments that are "not severe." For a person with FM, we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have "bad days and good days."

E. At steps 4 and 5, we use our RFC assessment to determine whether the person is capable of doing any past relevant work (step 4) or any other work that exists in significant numbers in the national economy (step 5). If the person is able to do any past relevant work, we find that he or she is not disabled. If the person is not able to do any past relevant work or does not have such work experience, we determine whether he or she can do any other work. The usual vocational considerations apply.

SSR 12-2p, 2012 WL 3104869, at *5-6 (footnotes omitted).

Although an eight-step sequential analysis was required in the instant action, Social Security Ruling 12-2p remains instructive. *See id*. at *1, 5 & nn. 1, 18. In the case *sub judice*, the ALJ stated that he considered "whether the claimant's back impairment/degenerative disc disease of the lumbar spine meet[s] or[] equal[s] Listing 1.04." (R. at 23.) He also stated that he "considered the combined effects of the claimant's impairments, both severe and non-severe, and . . . determined that the findings related to them are not at least equal in severity to those described in Listings 1.04, 5.06, 11.00, 12.04, and 12.06." (R. at 25.) Here, the ALJ found Plaintiff's fibromyalgia to be a severe impairment, but the decision does not mention fibromyalgia again.

The undersigned concludes the failure to further mention or analyze Plaintiff's fibromyalgia is reversible error. As Plaintiff notes, in a decision dated October 10, 2000, she was found disabled due to fibromyalgia, among many ailments. (*See* R. at 109.) Disability was continued in October of 2006 when Plaintiff was noted to "continue[] to have fatigue and pain throughout her body." (R. at 44.) Additionally, it is worth noting that Plaintiff saw Dr. Sofia Aksentijevich, a rheumatologist, on June 11, 2014. (R. at 776-77.) According to Dr. Aksentijevich's notes from that day, Plaintiff complained of "chronic pain throughout her back and her neck sometimes also in her hands [and] shoulders." (R. at 776.) Dr. Aksentijevich noted some muscular wasting in Plaintiff's extremities, "especially in [Plaintiff's] legs." (R. at 776.) Plaintiff was noted to have normal gait and stance. (R.

at 776.) Dr. Aksentijevich's notes further state, "Fair founding of the lumbar spine. Neck has fair range of motion." (R. at 776.) Dr. Aksentijevich's notes further indicate that Plaintiff reported being "too weak and fatigued to exercise currently because of [a] recent flare of Chron's disease." (R. at 777.) Dr. Aksentijevich stated, "We will try to maximize her medications to try to hopefully get her some relief." (R. at 777.)

At the hearing before the ALJ, Plaintiff testified that her pain is of such severity that it interferes with her ability to sleep. (R. at 1534.) She testified that, in addition to experiencing pain in her abdominal area, she has pain in both arms (though the pain in her left arm is worse), her neck, the top of her shoulders, and her back. (R. at 1535.) She stated that she takes Remicade (an infusion), as well as Cymbalta and Lyrica, for her pain. (R. at 1535.) She stated that she experiences nausea and dizziness as side effects of these medications, and after a Remicade infusion, she experiences additional abdominal pain for a few days to a week after the infusion, and she has "more hot flashes and cold sweats, which also wake [her] up at night." (R. at 1535.) She testified that Dr. Dayemo told her that treating her pain is difficult because "it's a combination" of "the fibromyalgia and the Crohn's." (R. at 1540-41.)

Given the ALJ's finding that Plaintiff's fibromyalgia was a severe impairment, and the evidence before the ALJ concerning Plaintiff's fibromyalgia, the undersigned concludes the ALJ's decision--in which he does not discuss fibromyalgia other than to mention it is a severe impairment-- is reversible error. In *Kinsey v. Colvin*, Civ. A. No. 8:13-1723-BHH, 2014 WL 6090772 (D.S.C. Nov. 13, 2014), the ALJ found the plaintiff had severe impairments of degenerative disc disease, anxiety/panic attacks, and right carpal tunnel syndrome, and non-severe impairments of fibromyalgia, depression, premature ventricular contractions and migraines. *Kinsey*, 2014 WL 6090772, at *9. The ALJ in that case specifically considered whether the plaintiff met Listing 1.04 or Listing 12.06. *Id.* at *10. In his RFC analysis, the ALJ "specifically discussed" the plaintiff's degenerative disc disease, carpal tunnel syndrome, premature ventricular contractions, and anxiety/panic attacks; he also noted that "there [was] no indication that [the plaintiff] ha[d]

undergone any mental health counseling or therapy." *Id*. at *10. In reversing and remanding, the court in *Kinsey* stated,

> [U]pon review of the ALJ's decision, the Court notes that the ALJ failed to discuss or even mention Plaintiff's fibromyalgia and migraines at Step 3 in concluding that Plaintiff's impairments, singularly or in combination, failed to equal a listed impairment. Further, the ALJ's failure to specifically make reference to Plaintiff's fibromyalgia and migraines in his RFC determination makes it impossible to confirm that he even focused on these impairments, or the doctors' notes regarding these diagnoses, in reaching his conclusions. Although the substantial evidence standard of review requires the Court to uphold the ALJ's disability determinations where supported by substantial evidence, the Court cannot conduct the review when it is unable to determine how the ALJ viewed particular evidence. Thus, the ALJ's declaration that "the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) [,]" [R. 13], is insufficient under the law.

*Kinsey*, 2014 WL 6090772, at *11 (citations omitted).

Similarly, in *Eller v. Colvin*, Civ. A. No. 1:14CV493, 2015 WL 4489479 (M.D.N.C. July 22, 2015) *adopted* (M.D.N.C. Aug. 13, 2015), the United States District Court for the Middle District of North Carolina reversed and remanded where the ALJ "failed to discuss or even mention" the plaintiff's fibromyalgia in concluding that the plaintiff's "impairments, singularly or in combination, failed to equal a listed impairment." *Eller*, 2015 WL 4489479, at *3 (citations omitted). The court in *Eller* stated,

> Given the ALJ's failure to mention or discuss Plaintiff's fibromyalgia at step three of the sequential evaluation, the undersigned cannot conclude that the ALJ's determination that Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (Tr. at 19) is supported by substantial evidence.

*Eller*, 2015 WL 4489479, at *4; *see also Hook v. Comm'r*, Civ. A. No. 1:14CV126, 2015 WL 518645, at *15 (N.D.W. Va. Feb. 6, 2015) ("Given the ALJ's failure to mention or discuss Plaintiff's fibromyalgia at Step Three of the sequential evaluation, the undersigned cannot conclude that the ALJ's determination that Plaintiff did not 'have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart

P, Appendix 1' (R. at 27) is supported by substantial evidence."); *Gordon v. Comm'r*, Civ. A. No. 2:15-cv-02814-MGL (D.S.C. Jan. 26, 2017) (reversing and remanding where the ALJ's finding that the plaintiff's fibromyalgia was non-severe was not supported by substantial evidence, and this determination was "not without consequence" in the ALJ's RFC assessment, where "[i]n his RFC analysis, the ALJ never mentions the Plaintiff's fibromyalgia or related symptoms aside from assessing the medical source opinions" (Dkt. No. 32 at 9-11 in Civ. A. No. 2:15-cv-02814-MGL)); *see also* SSR 12-2p, 2012 WL 3104869, at *6 (noting that assessing residual functional capacity in a person with fibromyalgia requires consideration of "a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days'"). The undersigned is persuaded by the opinions in *Kinsey*, *Eller*, and *Hook*, and therefore recommends reversing and remanding the instant action.

**B.      Remaining Allegations of Error**

Because the Court finds the ALJ's analysis with respect to Plaintiff's fibromyalgia is a sufficient basis to remand the case to the Commissioner, the undersigned does not specifically address Plaintiff's additional allegations of error. However, upon remand, the Commissioner should consider Plaintiff's allegations that the ALJ (a) "engaged in cherry picking evidence and wrongly evaluated Listing 5.06"; (b) "wrongly dismissed the opinion of [her] treating physician"; and (c) "erred in his assessment of the [Plaintiff's] credibility." (Dkt. No. 12 at 18, 20, 23.)

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.

IT IS SO RECOMMENDED.

August 4, 2017
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE